Mercantile Trading Company, Appellant, v. Michael Roth and Eleanor Roth, Copartners, Trading as Advance Storage, Appellees.

Gen. No. 45,942.

Opinion filed June 9, 1953. Released for publication June 30, 1953.

MORRIS A. HAFT, of Chicago, for appellant.

ROLAND V. LIBONATI, of Chicago, for appellees; IRA D. SCHULTZ, and HARRY G. FINS, both of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff sued defendants Michael and Eleanor Roth, husband and wife, doing business as Advance Storage, in the Municipal Court of Chicago for damages for conversion of 20 hospital tents, tent poles and tent

stakes stored by plaintiff in defendants' warehouse under warehouse receipts. The cause was heard by the court without a jury, which found the issues for the plaintiff and assessed plaintiff's damages at the sum of $430. From this judgment plaintiff appeals, upon the grounds that the fair, reasonable and market value of the merchandise was $3,980, of which $1,600 has been paid, and therefore judgment for $2,380 should have been entered in favor of plaintiff.

It is undisputed that on July 1, 1946, 800 hospital tents, together with a number of poles and stakes, were purchased by plaintiff from the United States Government, and that between July 30th and August 5th sixty of these tents were delivered to defendants, licensed public warehousemen in the City of Chicago, under warehouse receipts dated July 30, 1946, August 2, 1946, August 5, 1946 and August 6, 1946. On July 5, 1947 plaintiff advised defendants that it desired to take the tents out of storage and defendants gave plaintiff a statement of storage charges in the sum of $1,949.78, which was thereafter paid in full by check. On July 28, 1947 defendants were instructed by plaintiff to deliver the merchandise to a cartage company and it was fully removed from the warehouse about August 5, 1947, at which time plaintiff discovered a shortage of 20 tents, 19 bundles of poles and 4 cases of stakes. On August 17, 1947 a demand by letter was made for the return of this merchandise. The record does not show that any reply was made to the order of July 28th or letter of August 17th. On February 13, 1948 this suit was started, and on June 29, 1948, nearly a year after the tents were taken out of storage and five months after suit was instituted, defendants issued their check for $1,600 payable to the Mercantile Trading Co. in payment of the 20 tents at $100 a tent, less $400 which was claimed as additional storage charges.

Defendants maintain that the $100 a tent payment was in full of the account by virtue of an oral agreement made in May 1946.

The single issue of fact in the case is whether or not such an agreement was entered into between plaintiff and defendants whereby defendants purchased the merchandise, or a part thereof, for $100 a tent, it being so alleged in the affidavit of merits, or were vested with authority to sell what tents they were able at what price they might procure, provided they accounted to plaintiff for the proceeds at $100 per tent, as testified to on the trial. The evidence of an oral agreement is exceedingly vague and sketchy, consisting of. a single alleged conversation in May of 1946, two months prior to the issuance of the warehouse certificates, allegedly between Michael Roth on the one hand, and plaintiff's agent, one Fefferman, on the other. Based upon this conversation the court found that an oral agreement existed between the parties whereby defendants were authorized to sell the tents and remit to the plaintiff $100 for each tent sold. The court allowed plaintiff credit for the 20 undelivered tents at $100 per tent and $230 for the boxes of undelivered stakes and poles, upon which $1,600 had been paid, found defendants entitled to a credit of $200 for additional storage, and thus arrived at judgment for plaintiff in the sum of $430.

Plaintiff urges, first, that defendants are estopped to assert any interest in this merchandise as it is in violation of the Warehouse Receipts Act and contrary to the terms of the warehouse certificates, and second, that the finding of the trial court that an oral agreement existed for the sale of the tents is against the manifest weight of the evidence. In view of the result at which we have arrived it will be unnecessary to consider the second assignment of error.

■ We are of the opinion that the oral agreement fails to conform with provisions of section 2 of the Warehouse Receipts Act (par. 234, chap. 114, Ill. Rev. Stat. [1951; Jones Ill. Stats. Ann. 141.049]), which is as follows:

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms:

". . .

"(h) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership . . . ."

No indorsement showing the ownership or interest of the warehouseman appears on the receipts.

■ ■ Furthermore, section 8 (par. 240) of the Act [Ill. Rev. Stats. 1951, ch. 114, § 240; Jones Ill. Stats. Ann. 141.055] provides that a warehouseman, in the absence of some lawful excuse provided by the Act, is bound to deliver the goods "upon a demand made either by the holder of a receipt for the goods or by the depositor" etc. Section 16 (par. 248) [Ill. Rev. Stats. 1951, ch. 114, § 248; Jones Ill. Stats. Ann. 141.063] provides as follows:

"**When warehouseman excused from liability.**] § 16. No title or right to the possession of the goods, on the part of the warehouseman, unless such title or right is derived directly or indirectly from a transfer made by the depositor at the time of or subsequent to the deposit for storage, or from the warehouseman's lien, shall excuse the warehouseman from liability for refusing to deliver the goods according to the terms of the receipt."

This section authorizes a refusal to deliver if the warehouseman has acquired title or right to possession from a transfer made by the depositor at the time of

or subsequent to the deposit for storage. In the instant case the alleged oral agreement under which defendants claim their title or interest took place several months prior to the deposit of the merchandise and issuance of the warehouse receipts. Therefore plaintiff was entitled to delivery under the Act notwithstanding the alleged oral agreement to the contrary. Moreover, under the terms of the warehouse receipts offered in evidence it is provided: "No transfer of the ownership of these goods will be recognized unless entered upon the books of the Company and on this Warehouse Receipt." No such entry on the books of the company was proven on the trial and no such indorsement appears upon the warehouse receipts, all of which were introduced in evidence.

 Defendants contend that the sections of the statute above quoted apply only to negotiable, and not nonnegotiable, receipts. We do not agree. The paragraphs quoted make no such distinction, and where in other portions of the Act such distinction was intended it is expressly set forth. The Warehouse Receipts Act is declaratory of a long established policy intending to protect the public and depositor against any temptation on the part of the warehouseman toward overreaching. This is in considerable degree the reason why they are required to be licensed. *Central Elevator Co. v. People ex rel. Moloney,* 174 Ill. 203. In *Hannah v. People ex rel. Attorney General,* 198 Ill. 77, in considering the obligations of a warehouseman, the court said (p. 88):

"The rules of law applicable to the position and relation occupied by public warehousemen, and to their duties, are the same that apply to trustees, and others who occupy fiduciary relations. The law has established limitations upon the power of those occupying such confidential relation, to act in relation to the

property and the interests of those who are the rightful beneficiaries of the trust."

While the facts in the above case are not applicable to the instant case, the language serves to illustrate the relationship between the warehouseman-bailee and the depositor-bailor. This rule is emphasized in *Halsey v. Jordan,* 155 Ill. App. 144.

Defendants argue that this question was not raised by the pleadings and therefore plaintiff should not be permitted to urge it in this court for the first time. We find that the statement of claim expressly recites that the Warehouse Receipts Act was relied upon to establish the conversion. There is no merit to the further contention that the plaintiff permitted the evidence of the oral agreement to go in without objection, and should not now be heard to complain of this fact. Testimony as to the alleged oral agreement was first elicited from defendant Michael Roth, called under section 60 [Ill. Rev. Stats. 1951, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060], by a question from the court. Plaintiff's counsel expressly objected to the court's inquiry and, being overruled, indicated that he would rely on the presumption that in a case heard by the court without a jury the court would consider only the competent evidence. Evidence of the oral agreement should not have been considered. *Howland v. Newton Ice & Cold Storage Co.,* 240 Ill. App. 307.

No competent evidence appears in the record for the allowance of $200 as additional storage charges.

Nothing remaining to be resolved below, the judgment of the municipal court is reversed and judgment entered here for plaintiff in the sum of $2,380.

*Judgment reversed and judgment here.*

Robson, P. J. and Schwartz, J., concur.